**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                          No. 96-4125

FERNANDO GARCIA,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-95-126-L)

Argued: October 30, 1996

Decided: December 9, 1996

Before RUSSELL and WIDENER, Circuit Judges, and BULLOCK,
Chief United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Susan Marie Bauer, Assistant Federal Public Defender,
Greenbelt, Maryland, for Appellant. Andrea L. Smith, Assistant
United States Attorney, Baltimore, Maryland, for Appellee. **ON
BRIEF:** James K. Bredar, Federal Public Defender, Greenbelt, Mary-
land, for Appellant. Lynne A. Battaglia, United States Attorney, Balti-
more, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Following the district court's denial of his motion to suppress, Defendant Fernando Garcia entered a conditional plea of guilty to a one-count indictment charging him with possession with intent to distribute heroin. He appeals the denial of his motion to suppress, contending that the random boarding of a bus by law enforcement officers who directed passengers to identify their luggage was an unreasonable seizure in violation of the Fourth Amendment. We affirm.

I.

On February 9, 1995, agents of the Drug Enforcement Administration and Maryland State Police were stationed at the Maryland House rest area located on I-95 in Harford County, Maryland. At approximately 5:20 p.m. they approached a Greyhound bus driver whose bus had stopped at the rest area and asked if they could enter the bus. Upon obtaining permission from the driver, three officers boarded the bus. The officers were dressed in plain clothes with their weapons concealed.

Upon boarding the bus, the officers identified themselves, said that they were part of a drug interdiction team, and asked the passengers for their cooperation in identifying their luggage. One of the officers started in the back of the bus and moved forward, and another officer started in the front and moved toward the rear, asking each passenger to identify his or her luggage. The entire process took about five minutes. The agents talked to the passengers in a normal conversational tone of voice and spent only enough time with each passenger to determine which bags were owned by them. Defendant Garcia was sitting in the front right seat. When asked whether he had any bags on the bus Garcia gave a negative response.

2

After the process had been completed, a red-and-black duffle bag, near the front of the bus, had not been identified. One of the officers removed the bag from the overhead rack and used the bus intercom to ask whether the bag belonged to anyone. No one claimed the bag and it was removed from the bus. Outside the bus, a trained narcotics dog reacted positively to the bag after sniffing it. The officers then opened the bag and found heroin. The contents of the bag led the officers to believe that it belonged to Garcia, and they arrested him.

At the suppression hearing, the district court heard testimony from two of the officers, the bus driver, and a passenger, Jean Schwartz. Defendant presented Schwartz's testimony to support his argument that a "reasonable person" would have felt unable to decline the request of the officers and thus a "seizure" had occurred. However, the trial court discounted much of Schwartz's testimony, finding that it was based on a faulty recollection of events and that she was confused. The court also found the two officers who testified concerning the interdiction process to be credible.

Finding the encounter to be similar to those approved by this court in United States v. Flowers, 912 F.2d 707 (4th Cir. 1990), cert. denied, 501 U.S. 1253 (1991), and by the Supreme Court in Florida v. Bostick, 501 U.S. 429 (1991), the district court denied Defendant's suppression motion, finding that no unlawful seizure had occurred and that the duffle bag had been abandoned.

II.

We review legal conclusions de novo, and factual findings for clear error. United States v. Han, 74 F.3d 537, 540 (4th Cir.), cert. denied, 116 S. Ct. 1890 (1996). The evidence before the trial court clearly supported its findings and conclusion. Police may seek the voluntary cooperation of citizens without violating the Fourth Amendment. Flowers, 912 F.2d at 709. It is undisputed that the officers talked in a professional tone, without raising their voices, and at no point did they touch any of the passengers. They were not threatening in their appearance and demeanor nor were any weapons displayed. Garcia, who was sitting in the front of the bus, had easy access to the door. The entire encounter took approximately five minutes and did not significantly delay the bus schedule. Officers are permitted to seize and

3

search abandoned property, and when a person denies ownership of a bag that is subsequently searched he cannot later argue that his Fourth Amendment rights have been violated. <u>United States v. Clark</u>, 891 F.2d 501, 506 (4th Cir. 1989). Because this case is factually indistinguishable from <u>Flowers</u>, the decision of the district court in denying Defendant's motion to suppress is

<u>AFFIRMED</u>.

4